**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| MICROSOFT CORPORATION, a Washington corporation, <br><br>        Plaintiff, <br><br>    v. <br><br> EDGAR E. GAMBLE, an individual; FBT, LLC, a former Texas limited liability company; BUYING TECHNOLOGY, LLC, a Texas limited liability company; and SQL SOFTWARE SOLUTIONS, LLC, a Texas limited liability company, <br><br>        Defendants. | Case No. ___1:18-cv-888___ |

## <u>COMPLAINT</u>

### INTRODUCTION

1.       Defendant Edgar Gamble is a prolific distributor of infringing Microsoft software and components through his companies FBT, LLC, Buying Technology, LLC, and SQL Software Solutions, LLC (collectively, "Defendants").

2.       In order to attract customers, Defendants prominently display, without license or authorization, Microsoft trademarks on their websites sqlsoftwaresolutions.com and buyingtechnology.com.  Defendants' unauthorized use of Microsoft trademarks serves one purpose—to convince prospective customers that the products offered are legitimate, when they are not.  As a result, Microsoft, its customers, and the many businesses that sell genuine and legitimate Microsoft software and services are being hurt.  Microsoft brings this action to stop Defendants' unlawful trafficking of infringing Microsoft software and components and Defendants' use of Microsoft trademarks to do so.  This action seeks damages for the harm caused by Defendants and injunctive relief to stop future unlawful activities.

**PARTIES**

3.     Microsoft is a Washington corporation with its principal place of business in Redmond, Washington.  Microsoft develops, markets, distributes, and licenses computer software, among other products and services, and it provides technical support for that software.

4.     Defendant Edgar E. Gamble ("Gamble") is an individual who resides in Round Rock, Texas.  Gamble, through the use of multiple websites and entities, is the central figure in a widespread scheme to distribute infringing, pirated, and unauthorized Microsoft software and components.  Gamble derived a direct financial benefit from the Defendants' wrongful conduct and is, therefore, personally liable for all of the actions alleged in this Complaint.  Gamble had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint and did indeed do so.  Gamble is, therefore, also subject to personal liability under principles of secondary liability, including, without limitation, respondeat superior, vicarious liability, and/or contributory infringement.

5.     Defendant FBT, LLC ("FBT") was a Texas limited liability company with its principal place of business in Round Rock, Texas.  Public records list Gamble as the company's sole manager and its registered agent.  Public records also show that this company was terminated on December 20, 2016.  However, and as alleged in this Complaint, Microsoft made four test purchases of products from Defendants on March 7, 2017, April 21, 2017, June 9, 2017, and January 4, 2018, and the recipient of each of these payments was identified as FBT.

6.     Defendant Buying Technology, LLC ("Buying Technology") is a Texas limited liability company with its principal place of business in Pflugerville, Texas.  Public records list Gamble as the company's sole manager and its registered agent.  On information and belief, Buying Technology is the entity that runs the website buyingtechnology.com through which

Gamble advertises, markets and sells infringing, pirated, and unauthorized Microsoft software and components.

7.     Defendant SQL Software Solutions, LLC ("SQL Software Solutions") is a Texas limited liability company with its principal place of business in Pflugerville, Texas.  Public records list Gamble as the company's sole manager and its registered agent.  On information and belief, SQL Software Solutions is the entity that runs the website sqlsoftwaresolutions.com through which Gamble advertises, markets and sells infringing, pirated, and unauthorized Microsoft software and components.

## JURISDICTION AND VENUE

8.     The Court has subject matter jurisdiction over Microsoft's claims pursuant to 15 U.S.C. § 1121, 17 U.S.C. § 501, 28 U.S.C. §§ 1331, 1338(a), and 18 U.S.C. § 2318.  This Court also has subject matter jurisdiction under 28 U.S.C. § 1332 because this action is between citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

9.     The Court has personal jurisdiction over Defendants because each resides in the District and conducts business in the District, and a substantial part of Defendants' actions giving rise to this suit occurred in the District.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1400(a) and 28 U.S.C. § 1391(b)(1) because Defendants reside in the District.  Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this suit occurred in the District.

11.     Assignment to the Austin Division is appropriate because Defendants reside in Travis and Williamson counties, and substantial part of the events giving rise to this suit occurred in those counties.

## FACTS

**A.      The Global Problem of Software Piracy**

12.      Software developers lose billions of dollars in annual revenue from software piracy, namely, the unauthorized and unlawful copying, downloading, and distributing of copyrighted and trademarked software and related components.  Nearly forty percent of the software used worldwide is pirated and unlicensed.[1]  Software developers like Microsoft are not the only ones harmed by software piracy.  Consumers are also harmed by unlicensed software because there are no quality and service controls in the illegal distribution channel to ensure that consumers receive software with the necessary security features and updates.  In fact, a 2015 study conducted by the International Data Corporation ("IDC"), revealed a strong statistical correlation between the use of unlicensed software and cybersecurity threats.  As such, customers who are deceived by distributors of pirated software may unwittingly expose themselves to security risks that would not be present had they received fully licensed software. *See* FBI, *Consumer Alert: Pirated Software May Contain Malware* (Aug. 1, 2013), https://www.fbi.gov/news/stories/ pirated-software-may-contain-malware1 (noting the risk that pirated software is infected with malicious code, or "malware," which can be used to record keystrokes and capture sensitive information like user names, passwords, and Social Security numbers).

13.      Legitimate businesses selling genuine software are also harmed.  The sale of pirated software is fueled by discounted prices, which induce customers to purchase from

---

[1] *See* BSA | The Software Alliance, *Software Management: Security Imperative, Business Opportunity* (June 2018), https://gss.bsa.org/wp-content/uploads/2018/05/2018_BSA_GSS_Report_en.pdf.

websites and companies like those run by Defendants, rather than legitimate sellers.  The uneven playing field hurts honest businesses trying to compete fairly.

> **B.     Microsoft's Intellectual Property**

14.     Microsoft develops, advertises, markets, distributes, and licenses a number of computer software programs.  Microsoft sells licenses to use its software, not the software itself.  In other words, no title to Microsoft software passes to a user when he or she purchases a license for a Microsoft software program.

15.     Microsoft develops, advertises, markets, distributes, and licenses the following software programs, among others:

> a)     **Windows 7:**  Microsoft has developed, advertises, markets, distributes, and licenses a computer operating system called Microsoft Windows 7 ("Windows 7").  Windows 7 is available in a number of different versions including Windows 7 Ultimate, Windows 7 Professional, Windows 7 Home Premium, and Windows 7 Enterprise.  Microsoft holds a valid copyright in Windows 7 Ultimate, the most expansive version of Windows 7.  As a result, Microsoft's copyright in Windows 7 Ultimate encompasses all other versions of Windows 7.  Microsoft's copyright in Windows 7 Ultimate was duly and properly registered with the United States Copyright Office.  A true and correct copy of the Registration Certificate for Microsoft Windows 7 Ultimate, bearing the number TX 7-009-361, is attached as **Exhibit 1**.

> b)     **Windows Server 2012:**  Microsoft has developed, advertises, markets, distributes, and licenses a line of server operating system called Windows Server 2012. Windows Server 2012 is available in a number of different versions, each of which includes certain combinations of products, programs, and features.  Versions of Windows Server 2012 include Windows Server Standard 2012 R2, Windows Server Standard 2012, Windows Web Server 2012

R2, and Windows Web Server 2012.  Microsoft holds a valid copyright in Windows Server 2012, which encompasses all versions of Windows Server 2012.  Microsoft's copyright in Windows Server was duly and properly registered with the United States Copyright Office.  A true and correct copy of the Registration Certificate for Windows Server 2012, bearing the number TX 7-622-123, is attached as **Exhibit 2**.

        c)    **Microsoft Office 2013:**  Microsoft has developed, advertises, markets, distributes, and licenses a suite of productivity software for business, home, and educational use called Microsoft Office 2013 ("Office 2013").  Office 2013 is available in a number of different versions, each of which includes certain combinations of products, programs, and features.  Versions of Office 2013 include, but are not limited to, Office Professional 2013, Office Professional Home and Business 2013, Office Home and Business 2013, Office Home and Business 2013, and Office Professional Plus 2013.  Microsoft holds a valid copyright in Office Professional 2013, the most expansive version of Office 2013, and this copyright encompasses all versions of Office 2013.  Microsoft's copyright in Office Professional 2013 was duly and properly registered with the United States Copyright Office, bearing the number TX 7-649-882, and is attached hereto as **Exhibit 3**.

        d)    **Microsoft Office 365:**  Microsoft has developed, advertises, markets, distributes, and licenses a suite of productivity software for business, home, and educational use called Microsoft Office 365 ("Office 365").  Office 365 is available in a number of different versions, each of which includes certain combinations of products, programs, and features.  Versions of Office 365 include, but are not limited to, Office 365 Business, Office 365 Business Essentials, Office 365 Business Premium, Office 365 ProPlus, Office 365 Enterprise E1, Office 365 Enterprise E3, Office 365 Enterprise E5, Office Professional 2016, Office Professional Home and Business 2016, Office Home and Business 2016, Office Home and Student 2016, and

Office Professional Plus 2016.  Microsoft holds a valid copyright in Office 365 ProPlus 2016, the most expansive version of Office 365, and this copyright encompasses all versions of Office 365, including Office Professional 2016.  Microsoft's copyright in Office 365 ProPlus 2016 was duly and properly registered with the United States Copyright Office, bearing the number TX 8-097-602, and is attached hereto as **Exhibit 4**.

16.     Microsoft has developed advertises, markets, distributes, and licenses the above software and related components using various trademarks and service marks, and uses these marks to distinguish Microsoft's software and related components from the software or products of others in the same field or related fields.  Relevant to this case, Microsoft has duly and properly registered a number of trademarks and service marks in the United States Patent and Trademark Office on the Principal Register, including without limitation:

a)      "MICROSOFT," Trademark and Service Mark Registration No. 1,200,236 for, *inter alia*, computer programs and computer programming services, also registered under Registration Nos. 1,673,353; 1,684,033; 2,285,870; 2,163,597; 1,689,468; 1,966,382; 2,637,360; 2,198,155; 2,843,964; 2,198,153; 2,198,156; 2,198,154; 2,337,072; 2,250,973; and 2,872,708.

b)      "WINDOWS," Trademark and Service Mark Registration No. 1,872,264 for, *inter alia*, computer programs and manuals sold as a unit, also registered under Registration Nos. 1,989,386; 2,559,402; 2,212,784; 2,463,510; 2,463,526; 2,463,509; 2,565,965; and 4,407,849.

c)      "MICROSOFT CORPORATE COMPOSITE LOGO," Trademark and Service Mark Registration No. 4,552,363, for, *inter alia*, computer software, also registered under Registration Nos. 2,250,973; 2,637,360; 2,730,599; 2,843,964; 3,877,801; and 4,029,299.

d)      "MICROSOFT CORPORATE LOGO," Trademark and Service Mark Registration No. 4,560,827, for, *inter alia*, computer software, also registered under Registration

Nos. 2,730,599; 3,877,801; and 4,029,299.

e)        "OFFICE 2012 DESIGN," Trademark and Service Mark Registration No. 4,459,826, for, *inter alia*, computer software.

f)        "OFFICE WITH OFFICE 2012 DESIGN," Trademark Registration No. 4,456,462, for, *inter alia*, computer software.

g)        "FLAG DESIGN (2012)," Trademark Registration No. 4,400,958, for, *inter alia*, computer software; and No. 4,448,380 for, *inter alia*, numerous goods and services in the field of computers.

h)        "WINDOWS SERVER," Trademark Registration No. 3,056,149, for, *inter alia*, computer software, also registered under Registration Nos. 1,872,264; 1,875,069; and 2,513,051.

i)        "SQL SERVER," Trademark Registration No. 3,301,806 for, *inter alia*, computer programs for distributed relational database management and development.

j)        "SERVER DESIGN," Trademark Registration No. 3,764,113 for, *inter alia*, computer software.

k)        "EXCEL," Trademark Registration No. 2,942,050, for, *inter alia*, computer software.

l)        "POWERPOINT," Trademark Registration No. 1,475,795, for, *inter alia*, computer software.

m)        "ONENOTE," Trademark Registration No. 2,844,710, for, *inter alia*, computer software.

n)        "OUTLOOK," Trademark Registration No. 2,188,125, for, *inter alia*, computer software.

o) "ACCESS," Trademark Registration No. 3,238,869, for, *inter alia*, computer software, also registered under Registration Nos. 1,739,829; 1,741,086; and 2,254,102. True and correct copies of the Trademark Registrations for (a) through (o) above are attached as **Exhibits 5 through 19**, respectively.

### C. Certificates of Authenticity

17. Like many software developers, Microsoft has implemented a wide range of technologies and tools to protect its customers and combat theft and infringement of its intellectual property. One tool is Microsoft's Certificates of Authenticity ("COAs" or "COA labels"), which contain both overt and covert security features that Microsoft and its supply chain partners affix to devices to help customers and resellers identify when Microsoft software is genuine. As with any authenticity tool, COAs are not to be trafficked separately from the software they are intended to authenticate and when they are, they are referred to under federal law as "illicit labels." The separate sale of illicit COA labels facilitates software piracy as they are used to authenticate unlicensed, pirated, and counterfeit software rather than genuine, licensed software.

### D. Microsoft Product Activation Keys

18. Another important element of Microsoft's anti-piracy technology is product activation, which involves the activation of software through product activation keys. A Microsoft product activation key is a 25-character alphanumeric string generated by Microsoft and provided to customers and Original Equipment Manufacturers ("OEM"). When customers and OEMs install certain Microsoft software on a device, they are required to enter a product activation key. As part of the activation process, customers and, in some cases, OEMs, voluntarily contact Microsoft's activation servers over the Internet and transmit their product keys and other technical information about their device to the activation servers.

19.     The activation process is analogous to the activation of credit cards or mobile phones with a code provided by the financial institution or the mobile carrier.  Because in certain instances Microsoft's copyrighted software is capable of being installed on an unlimited number of computers, Microsoft relies on the product activation process to detect unauthorized use and protect consumers from the risks of non-genuine software.

20.     Product activation keys are not a software license, nor do they constitute authorization from Microsoft to access or use software without the appropriate license.  Product activation is merely technology used by Microsoft to protect its intellectual property from unauthorized use, counterfeiting, and other forms of abuse.  Microsoft does not sell or otherwise provide product activation keys separately from licensed software, nor does it authorize others to do so.

21.     One prevalent facilitator of unauthorized software use is the unlawful distribution of Microsoft product activation keys that have been decoupled from the software they were authorized to activate.  Distributors of these keys commonly instruct their customers, as in this case, to download the software from Microsoft and then use the decoupled keys to activate the software.  In these instances, the customers downloading the software from Microsoft do not purchase the required software license, and Microsoft is not paid for the software being used.  The global black market for decoupled product activation keys generates millions of dollars of illicit revenues for distributors.

E.      **Defendants' Unlawful Distribution of Microsoft Software and Components**

22.     Defendants are engaged in the online distribution of infringing, pirated, and unauthorized Microsoft software and components, including COAs and decoupled product activation keys.  Defendants' conduct has irreparably harmed Microsoft and its customers.  If

10

Defendants' illegal and infringing conduct is not enjoined, Defendants will continue to cause irreparable harm.

### (a)  Distributor Evidence

23.     In 2016, Microsoft brought an action against a distributor of decoupled product activation keys and his entities based on test purchases from those entities.  In all of these test purchases, Microsoft investigators received decoupled product activation keys.

24.     This distributor testified in discovery in Microsoft's action that one of his two largest suppliers of decoupled Microsoft product keys was a company called Flashback Technologies (also known as FBT), which was run by Gamble.  The distributor stated that Gamble first contacted him via a cold call in late 2014 or early 2015 to solicit his business.  He also stated that Gamble was his only contact at Flashback Technologies.

25.     From May 2015 through July 2016, bank records show that the distributor paid Gamble at least $1.5 million, and the payments were transferred to bank accounts in the name of FBT.  The distributor testified that at least half of the payments to Gamble were for decoupled Microsoft product keys, which consisted primarily of product keys for Office 2013, Office 2016 and Windows 7.

26.     The distributor also testified to the typical form of transactions involving the purchase of Microsoft product keys from Gamble.  Specifically, Gamble provided the distributor the purchased product keys in a list via email.  Each list could contain anywhere from a single key to 100 product keys.  These product keys never came with any packaging or other proper license components.

27.     On information and belief, Defendants knew and intended the distributor to sell the decoupled product activation keys to consumers who would unwittingly use them to activate unlicensed Microsoft software.

**(b)      Defendants' Websites**

28.      Defendants unlawfully advertise and sell infringing, pirated, and unauthorized Microsoft software and components directly to end users through two websites Defendants own and operate:  buyingtechnology.com and sqlsoftwaresolutions.com.

29.      Public records list the registrant of the domain buyingtechnology.com as Edgar Gamble, with an address of 3720 Gattis School Road, #800-210, Round Rock, Texas, 78664—a known address used by Gamble.  The registrant also used the email address flashbacktech3720@gmail.com and the phone number (512) 218-0095, which are both associated with Gamble.

30.      The domain sqlsoftwaresolutions.com was registered using an identity anonymizing company (Domains By Proxy, LLC) to hide the registrant's true identity. However, the company's website lists its mailing address as 3720 Gattis School Road, #800-210, Round Rock, Texas, 78664—a known address used by Gamble.  It also provides a physical location at 2011 Mashburn Street #A, Pflugerville, Texas, 78660.  This is the address Gamble used to register the entity SQL Software Solutions, and Gamble is listed in public records as its manager and registered agent.

31.      Through these websites, Defendants use Microsoft's trademarks, service marks and trade dress to make their product offerings appear to be genuine and legitimate Microsoft software.  They are not.

**(c)      Test Purchases**

32.      Between March 7, 2017, and January 9, 2018, Microsoft investigators test purchased the following infringing items from Defendants.  Microsoft's trademarks were used to advertise each of these products and Gamble communicated with the investigators and/or received payment for the products in each instance.

12

33.     **Test Purchase 1:**  On March 7, 2017, an investigator working on behalf of Microsoft initiated a test purchase of what was advertised as "Microsoft Office 2016 Home and Business" from Defendant website buyingtechnology.com.  Payment was made to FBT with an address of 3720 Gattis School Road, #800-210, Round Rock, TX.  FBT was not an active legal entity at the time of payment.  The investigator received email correspondence which contained the name Edgar Gamble.  The investigator received a decoupled product activation key.

34.     **Test Purchase 2:**  On April 21, 2017, an investigator working on behalf of Microsoft initiated a test purchase of what was advertised as "Windows Server 2012 R2 Standard" from Defendant website sqlsoftwaresolutions.com.  Payment was made to FBT with an address of 3720 Gattis School Road, #800-210, Round Rock, TX.  FBT was not an active legal entity at the time of payment.  The investigator received email correspondence which contained the name EE Gamble.  The investigator received a link to a counterfeit download site. The investigator also received a physical COA label that was not affixed to any hardware containing Microsoft software.

35.     **Test Purchase 3:**  On June 9, 2017, an investigator working on behalf of Microsoft initiated a test purchase of what was advertised as "Microsoft Office 2016 Professional" from Defendant website buyingtechnology.com.  Payment was made to FBT with an address of 3720 Gattis School Road, #800-210, Round Rock, TX.  FBT was not an active legal entity at time of payment.  The investigator received email correspondence which contained the name Edgar Gamble.  The investigator received a decoupled product activation key.

36.     **Test Purchase 4:**  On January 4, 2018, an investigator working on behalf of Microsoft initiated a test purchase of what was advertised as "Windows Server 2012 R2 Standard" from Defendant website sqlsoftwaresolutions.com.  Payment was made to FBT.  FBT was not an active legal entity at time of payment.  The investigator received email

13

correspondence which contained the name Edgar Gamble.  The investigator received a link to a counterfeit download site.  The investigator also received a physical COA label that was not affixed to any hardware containing Microsoft software.

## CAUSES OF ACTION

### FIRST CLAIM

### Trafficking in Illicit COA Labels – 18 U.S.C. § 2318

50.     Microsoft specifically realleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

51.     Microsoft is the sole owner of numerous software programs, including Microsoft Windows Server 2012, and of the corresponding copyrights with the registration numbers listed above.

52.     Microsoft designs, creates and uses COA labels in connection with genuine copies of Microsoft software.  These COA labels are designed to be affixed to, enclosed with, or accompany Microsoft's computer software programs for purposes of verifying that the software is not counterfeit or infringing of any copyright.

53.     Defendants knowingly transported, transferred, or otherwise disposed of illicit Microsoft COA labels to other persons for purposes of commercial advantage or private financial gain, as alleged in this Complaint.

54.     As a result of Defendants' wrongful conduct, and pursuant to 18 U.S.C. § 2318(e), Microsoft is entitled to recover its actual damages and any additional profits earned by Defendants.  Alternatively, Microsoft may elect, at any time before final judgment is rendered, to recover statutory damages for each violation of 18 U.S.C. § 2318(a).  Microsoft is also entitled to its reasonable attorneys' fees and costs.

14

55.     Microsoft is further entitled to injunctive relief and an order compelling the impounding of any article in Defendants' possession that was involved in a violation of 18 U.S.C. § 2318(a).  Microsoft has no adequate remedy at law for Defendants' wrongful conduct because, among other things: (a) Defendants' conduct constitutes harm to Microsoft's reputation and goodwill such that Microsoft could not be made whole by any monetary award; (b) if Defendants' wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin or authenticity of the infringing materials; and (c) Defendants' wrongful conduct, and the resulting harm to Microsoft, is continuing.

## SECOND CLAIM

### Contributory Copyright Infringement – 17 U.S.C. §§ 501 *et seq.*

56.     Microsoft specifically realleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

57.     Microsoft is the sole owner of Microsoft Windows 7, Office 365, Office 2013, and Windows Server 2012, and of the corresponding copyrights with the registration numbers listed above.

58.     Defendants have contributed to the infringement of Microsoft's copyrights by distributing Microsoft product keys decoupled from the software they were intended to activate without approval or authorization from Microsoft to end users that were not licensed to use the software associated with the product keys.  Defendants knew, intended, and directed their customers to use the product keys Defendants sold to activate unlicensed copies of Microsoft software.

59.     At a minimum, Defendants acted with willful blindness to, or in reckless disregard of, Microsoft's registered copyrights.

60.     On information and belief, Defendants have committed, and continue to commit, acts contributing to the infringement of Microsoft's copyrights.

61.     As a result of Defendants' wrongful conduct, Microsoft is entitled to recover its actual damages and Defendants' profits attributable to the infringement.  Alternatively, Microsoft is entitled to statutory damages under 17 U.S.C. § 504(c).

62.     The award of statutory damages should be enhanced in accordance with 17 U.S.C. § 504(c)(2).

63.     Microsoft is further entitled to injunctive relief and an order impounding all infringing materials.  Microsoft has no adequate remedy at law for Defendants' wrongful conduct because, among other things:  (a) Microsoft's copyright is unique and valuable property which has no readily determinable market value; (b) Defendants' infringement harms Microsoft such that Microsoft could not be made whole by any monetary award; and (c) Defendants' wrongful conduct, and the resulting damage to Microsoft, is continuing.

### THIRD CLAIM

**Trademark Infringement – 15 U.S.C. § 1114**

64.     Microsoft specifically realleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

65.     Microsoft advertises, markets, distributes, and licenses its software and related components under the trademarks described above, and uses these trademarks to distinguish Microsoft's software and related components from the software or products of others in the same field or related fields.

16

66.     Because of Microsoft's long, continuous, and exclusive use of these trademarks, they have come to mean, and are understood by customers, end users, and the public to signify, software programs and related components or services of Microsoft.

67.     Defendants have been, and continue to be, involved in using Microsoft's registered trademarks in advertising, marketing, and/or offering Microsoft software and product activation keys to be used by customers, without Microsoft's authorization, to activate unlicensed and pirated software.

68.     Defendants are not licensed to use these registered trademarks.

69.     Defendants' use of the trademarks in advertising, marketing, and selling software and product activation keys is likely to cause confusion, mistake, or deception as to their source, origin, or authenticity, and the source, origin or authenticity of the unlicensed and pirated software that Defendants contribute to and induce their customers to download and activate.

70.     Further, Defendants' activities are likely to lead the public to conclude, incorrectly, that the infringing materials that Defendants are advertising, marketing, installing, distributing, and/or selling originate with or are authorized by Microsoft, thereby harming Microsoft, its licensees, and the public.

71.     At a minimum, Defendants acted with willful blindness to, or in reckless disregard of, Microsoft's registered marks.

72.     As a result of Defendants' wrongful conduct, Microsoft is entitled to recover its actual damages, Defendants' profits attributable to the infringement, and treble damages and attorney fees pursuant to 15 U.S.C. § 1117(a) and (b).  Alternatively, Microsoft is entitled to statutory damages under 15 U.S.C. § 1117(c).

73.     Microsoft is further entitled to injunctive relief and an order compelling the impounding of all infringing and unauthorized materials.  Microsoft has no adequate remedy at

law for Defendants' wrongful conduct because, among other things:  (a) Microsoft's trademarks and service marks are unique and valuable property that have no readily determinable market value; (b) Defendants' infringement constitutes harm to Microsoft's reputation and goodwill such that Microsoft could not be made whole by any monetary award; (c) if Defendants' wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin or authenticity of the infringing materials; and (d) Defendants' wrongful conduct, and the resulting harm to Microsoft, is continuing.

## FOURTH CLAIM

### False Advertising – 15 U.S.C. §§ 1125 *et seq.*

74.     Microsoft specifically realleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

75.     Defendants have made false and misleading representations and descriptions of fact in connection with the offering for sale and sale of unlicensed Microsoft software through their websites, including without limitation, that Defendants are offering licensed Microsoft software.

76.     Defendants' false and misleading representations and descriptions of fact were made in commercial advertising or promotion, including without limitation, in connection with the offering for sale and sale of unlicensed Microsoft software through their websites.

77.     Defendants' false and misleading representations and descriptions of fact misrepresent the nature, characteristics, qualities, or origin of their goods, services, and commercial activities.

78.     Defendants' use of Microsoft's copyrights and trademarks referenced above and its false and misleading representations and descriptions of fact in interstate commerce in

connection with its offering for sale of unlicensed Microsoft software has either deceived or has the capacity to deceive a substantial segment of potential consumers, and such deception is material, in that it is likely to influence the consumers' purchasing decisions.

79.     Defendants have used, and continue to use, Microsoft's copyrights and trademarks referenced above to compete unfairly with Microsoft and to deceive customers.

80.     Defendants' conduct constitutes false advertising and federal unfair competition, in violation of 15 U.S.C. § 1125(a).

81.     Defendants' wrongful conduct is likely to continue unless restrained and enjoined.

82.     As a result of Defendants' wrongful conduct, Microsoft is entitled to recover its actual damages, Defendants' profits, and treble damages and attorney fees pursuant to 15 U.S.C. § 1117.

83.     Further, Microsoft is entitled to injunctive relief and to an order directing Defendants to stop representing or implying that they are offering licensed Microsoft software. Microsoft has no adequate remedy at law for Defendants' wrongful conduct because, among other things:  (a) Defendants' advertising, marketing, installation, or distribution of unlicensed Microsoft software constitutes harm to Microsoft such that Microsoft could not be made whole by any monetary award; and (b) Defendants' wrongful conduct, and the resulting damage to Microsoft, is continuing.

## **FIFTH CLAIM**

### **False Designation of Origin and Unfair Competition – 15 U.S.C. §§ 1125 *et seq.***

84.     Microsoft specifically realleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

85.    Microsoft advertises, markets, distributes, and licenses its software and related components under the trademarks described above, and uses these trademarks to distinguish Microsoft's software and related components from the software or products of others in the same field or related fields.

86.    Because of Microsoft's long, continuous, and exclusive use of these trademarks and service marks, they have come to mean, and are understood by customers, end users, and the public to signify, software or services of Microsoft.

87.    Microsoft has also designed distinctive and aesthetically pleasing displays, logos, icons, graphic images, and packaging (collectively, "Microsoft visual designs") for its software programs and related components.

88.    On information and belief, Defendants' wrongful conduct includes the use of Microsoft's marks, name, and/or imitation visual designs (specifically displays, logos, icons, graphic designs, and/or packaging virtually indistinguishable from Microsoft visual designs) in connection with their goods and services.

89.    On information and belief, Defendants engaged in such wrongful conduct with the purpose of misleading or confusing customers and the public as to the origin and authenticity of the goods and services advertised, marketed, installed, offered or distributed in connection with Microsoft's marks, name, and imitation visual designs, and of trading upon Microsoft's goodwill and business reputation.  Defendants' conduct constitutes (a) false designation of origin, (b) false or misleading representation or description, and (c) false or misleading representation that the imitation visual images originate from or are authorized by Microsoft, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

90.    Defendants' wrongful conduct is likely to continue unless restrained and enjoined.

91.    As a result of Defendants' wrongful conduct, Microsoft is entitled to recover its

actual damages, Defendants' profits, and treble damages and attorney fees pursuant to 15 U.S.C. § 1117.

92.     Further, Microsoft is entitled to injunctive relief and to an order compelling the impounding of all imitation marks and visual designs being used, advertised, marketed, installed, offered or distributed by Defendants.  Microsoft has no adequate remedy at law for Defendants' wrongful conduct because, among other things:  (a) Microsoft's marks, name and visual designs are unique and valuable property which have no readily determinable market value; (b) Defendants' advertising, marketing, installation, or distribution of imitation visual designs constitutes harm to Microsoft such that Microsoft could not be made whole by any monetary award; and (c) Defendants' wrongful conduct, and the resulting damage to Microsoft, is continuing.

## SIXTH CLAIM

### Trade Dress Infringement – 15 U.S.C. §§ 1125 *et seq.*

93.     Microsoft specifically realleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

94.     Microsoft's trade dress—specifically, the design for its software—is used in commerce, is non-functional, is inherently distinctive, and has acquired secondary meaning in the marketplace.

95.     Microsoft's trade dress has acquired secondary meaning in the marketplace as a result of Microsoft's extensive advertising, Microsoft's sales success, and the length and exclusivity with which Microsoft has used its product packaging and design, among other factors.

96.     Microsoft's use of the trade dress occurred before Defendants started using

similar versions of the trade dress.

97.     Defendants are unfairly competing with Microsoft by adopting and advertising infringing trade dress to identify their goods and services.

98.     The intent and result of Defendants' actions are to create the impression and perception that Defendants' goods and services emanate from or are endorsed by Microsoft, causing confusion, mistake, and deception among the public as to the source and origin of those goods and services.

99.     Defendants' actions are intended to cause, have caused, and are likely to cause confusion, mistake, deception among consumers, the public, and the trade who recognize and associate Microsoft trade dress with Microsoft.

100.     Moreover, Defendants' conduct is likely to cause confusion, to cause mistake, or to deceive consumers, the public, and the trade as to the source of the infringing products, or as to a possible affiliation, connection, or association between Microsoft, Defendants, and the infringing products.

101.     Defendants' use of an infringing trade dress has caused, and unless restrained, will continue to cause injury to Microsoft.

102.     By using the same or a confusingly similar trade dress, Defendants have misrepresented the nature, origin, characteristics, and quality of their products, in violation of the Lanham Act, 15 U.S.C. § 1125(a).

103.     By reason of Defendants' actions, Microsoft has suffered and will continue to suffer irreparable harm for which it has no adequate remedy at law, and thus, Microsoft is entitled to injunctive relief.

104.     As a result of Defendants' wrongful conduct, Microsoft is entitled to recover its actual damages, Defendants' profits, and treble damages and attorney fees pursuant to 15 U.S.C.

§ 1117.

## PRAYER FOR RELIEF

WHEREFORE, Microsoft respectfully asks this Court to enter judgment against Defendants and against each of their directors, principals, officers, agents, representatives, employees, attorneys, subsidiaries, parents, affiliates, successors and assigns, and all persons in active concert or participation with them, granting the following relief:

A.      The entry of judgment in Microsoft's favor on all claims.

B.      A permanent injunction restraining and enjoining Defendants, their directors, principals, officers, agents, representatives, employees, attorneys, subsidiaries, parents, affiliates, successors and assigns, and all others in active concert or participation with it, from:

(i)      copying or making any other infringing use or infringing distribution of Microsoft's software and other intellectual property including but not limited to the software identified by the trademark, service mark, and copyright registration numbers listed above;

(ii)     manufacturing, assembling, producing, distributing, offering for distribution, circulating, selling, offering for sale, advertising, importing, promoting, or displaying any Microsoft software or other intellectual property bearing any simulation, reproduction, counterfeit, copy, or colorable imitation of any of Microsoft's registered trademarks, service mark, or copyrights, including, but not limited to, the trademark, service mark, and copyright registration numbers listed above;

(iii)    using any simulation, reproduction, counterfeit, copy, or colorable imitation of Microsoft's registered trademarks, service mark, or copyright including, but not limited to the trademark, service mark, and copyright

23

registration numbers listed above, in connection with the manufacture, assembly, production, distribution, offering for distribution, circulation, sale, offering for sale, import, advertisement, promotion, or display of any software, component, and/or other item not authorized or licensed by Microsoft;

(iv)    knowingly purchasing, transporting, transferring, or otherwise disposing of counterfeit or illicit Microsoft COA labels;

(v)     directly or indirectly engaging in false advertising or promotions regarding any Microsoft products;

(vi)    using any false designation of origin or false or misleading description or false or misleading representation that can or is likely to lead the trade or public or individuals erroneously to believe that any software, component, and/or other item has been manufactured, assembled, produced, distributed, offered for distribution, circulation, sold, offered for sale, imported, advertised, promoted, displayed, licensed, sponsored, approved, or authorized by or for Microsoft, when such is not true in fact; and

(vii)   assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities listed above.

C.      That the Court enter an order requiring Defendants to provide Microsoft a full and complete accounting of all amounts due and owing to Microsoft as a result of Defendants' unlawful activities.

D.      That Defendants be required to pay all general, special, actual, and statutory damages that Microsoft has sustained, or will sustain, as a consequence of Defendants' unlawful acts, and that such damages be enhanced, doubled, or trebled as provided for by 17 U.S.C. §

24

504(c) and 15 U.S.C. § 1117(b).

E.      That the Court enter an order pursuant to 15 U.S.C. § 1116 and 17 U.S.C. § 503 impounding all counterfeit and infringing copies of purported Microsoft software; materials bearing any of Microsoft's trademarks or service marks; media containing a work Microsoft has copyrighted; and any related item, including business records, that are in Defendants' possession or under their control.

F.      That the Court enter an order impounding any article in Defendants' possession that was involved in a violation of 18 U.S.C. § 2318(a).

G.      That Defendants be required to pay to Microsoft both the costs of this action and the reasonable attorneys' fees incurred by Microsoft in prosecuting this action, as provided for by 15 U.S.C. § 1117, 17 U.S.C. § 505, and 18 U.S.C. § 2318.

H.      Such other relief that Microsoft is entitled to under law, and any other and further relief as this Court or a jury may deem just and equitable.

Respectfully submitted,

_____

John R. Nelson
  State Bar No. 00797144
DICKINSON WRIGHT PLLC
303 Colorado Street, Suite 2050
Austin, Texas 78701
(512) 770-4214 (Telephone)
(844) 670-6009 (Facsimile)
jnelson@dickinsonwright.com


Bonnie MacNaughton (*pro hac forthcoming*)
James H. Corning (*pro hac forthcoming*)
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 757-3150 (Telephone)
(206) 757-7700 (Facsimile)
bonniemacnaughton@dwt.com
jamescorning@dwt.com


**ATTORNEYS FOR PLAINTIFF
MICROSOFT CORPORATION**